# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        Case No. 18-CR-237

GABRIEL LEE BROWN,

      Defendant.

## MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT INVITING JURY NULLIFICATION

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Adam Ptashkin and Philip T. Kovoor, Assistant United States Attorneys, hereby respectfully files this Motion in Limine. The United States requests that the Court issue a pre-trial order excluding certain categories of evidence as inviting jury nullification. Although defendant's experienced counsel will likely refrain from encouraging jury nullification, the United States files the motion in an abundance of caution.

Jury nullification occurs when there is an acquittal despite the fact that the United States proved every element of the charged offense beyond a reasonable doubt. *United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *see United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly."). The Seventh Circuit has explained that although jury nullification is a fact because the government cannot appeal an acquittal, "it is not a right, either of the jury or of the defendant." *Perez*, 86 F.3d at 736 (7th Cir. 1996); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is not to be positively

sanctioned by instructions, but is to be viewed as an aberration under our system."). As a matter of law, the defendant is prohibited from raising a jury nullification argument to the jury. *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1983). Because jury nullification is contrary to the jury's sworn duty, neither defense counsel nor the court "should encourage jurors to exercise this power." *United States v. Sepulvado*, 15 F.3d 1161, 1190 (1st Cir. 1993). Thus, courts "may block defense attorneys' attempts to serenade a jury with the siren song of nullification." *Id.* Indeed, courts have a duty to do so. *United States v. Thomas*, 116 F.3d 606, 615-16 (2d Cir. 1997).

## I. The Defendant's Family and Financial Situation

The defendant waived his *Miranda* rights and spoke with a Wauwatosa police officer in a recorded post arrest interview on December 5, 2018. In his post-arrest interview, the defendant states he has multiple children. The defendant also details his financial situation, his fear of eviction, and the fact that he has not been paid by his employer for multiple weeks prior to the bank robbery. The defendant states he intended to use the proceeds of the robbery to fund his family's rent and Christmas presents for his children. In addition, in his motion to reopen his detention hearing, the defendant also discussed an auto accident and medical issues the accident caused, and his wife's high risk pregnancy.

The defendant's unfortunate financial predicament, and the fact that he has children, are unfairly prejudicial and could only be offered by the defendant to support jury nullification. The defendant should also not be allowed to discuss the fact that he was not paid by his employer for multiple weeks before the robbery, and that he was struggling to financially provide for his family in the weeks leading up to the robbery. This extremely sympathetic story is irrelevant to the elements of the charged offenses, and its presentation to the jury would serve no purpose other than to invite jury nullification. The defendant should also not be allowed to allude to the effects

that incarceration will have on his wife and children, or his family's medical issues.

Relatedly, the video of the post-arrest interview of the defendant is over 66 minutes in length. The United States intends to only enter into evidence and play clips of the video that last approximately 18 minutes and contain significant admissions about the bank robbery.

The defendant should be barred from playing clips of the video in which the defendant discusses his defendant's family situation or financial predicament. Specifically, this includes the portion of the video time stamped as minutes 9:56:25 a.m. -10:06:55 a.m. of the video, and most of minutes 10:21:31 - 10:47:16 of the video. The United States notes that, presumably, the defendant would not want the majority of the first 13 minutes of the video (time stamped as (9:40:40 – 9:53:44) played in front of the jury.[1] In this portion of the video, the defendant and the interviewer discuss the defendant's criminal history.

The United States also notes that when offered into evidence by the United States, the defendant's statements in the videos are admissible statements of a party opponent under FED. R. EVID. 801(d)(2). The defendant cannot offer clips of the video into evidence or cross-examine a government witness in order to solicit statements the defendant made in the post-arrest interview, as the defendant is not a party opponent of himself. *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999).[2] These statements by the

---

[1] The United States will offer into evidence a clip from the 9:53:45 – 9:56:25 second mark, during which the defendant was advised of and waived his Miranda rights. The United States will offer into admission a second clip from 10:06:56 – 10:21:30.

[2] *See United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012) ("Under the doctrine of completeness, codified at Federal Rule of Evidence 106, "a complete statement is required to be read or heard when it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (citation and internal quotation marks omitted). The doctrine, however, does not require admission of statements that are "neither explanatory of nor relevant to the admitted passages." *Id*. (citation and internal quotation marks omitted). Moreover, a party cannot use the doctrine of completeness to

defendant, when offered into evidence by the defendant, are inadmissible hearsay. The defendant is, of course, free to testify in his case-in-chief.

It appears that semi-regularly the prosecution actually seeks to admit evidence of poverty or a change in the defendant's financial situation in order to prove the motive for a financial crime. Normally, poverty evidence alone is either not relevant as proof of motive or unfairly prejudicial. Poverty coupled with a sudden change in financial circumstances has been found relevant as motive and as circumstantial evidence of the crime, when the United States offered this evidence for admission. *United States v. Mitchell*, 172 F.3d 1104, 1108-10 (9th Cir. 1999); *United States v. Weller*, 238 F.3d 1215, 1220-21 (10th Cir. 2001). However, in this case, United States is not seeking to use the defendant's change in finances as motive evidence. The United States respectfully submits if the defendant offered this evidence at trial, the probative value of the evidence is substantially outweighed by unfair prejudice. The defendant obviously would not be seeking to prove his motive to commit the bank robbery. If the defendant introduced this evidence, the defendant's finances only supports a jury nullification argument through the creation of sympathy for the defendant and his children.

## II. <u>Discussion of Potential Penalties</u>

Knowledge of the potential penalties faced by the defendant may tempt the jury to render a verdict based on sympathy, rather than the law and the facts. As explained by the Supreme Court, the potential penalty faced by a criminal defendant is not a matter for the jury's consideration:

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on

---

circumvent Rule 803's exclusion of hearsay testimony. *Id*. (rejecting defendant's attempt to cross-examine officers about the omitted portions of his post-arrest statement).")

> the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of the verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion.

*Shannon v. United States*, 512 U.S. 573, 579 (1994).

The Seventh Circuit has stated: "[T]he practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored." *United States v. Lewis,* 110 F.3d 417, 422 (7th Cir. 1997). Also, the Seventh Circuit's pattern jury charges include the following standard charge: "In deciding your verdict, you should not consider the possible punishment for the defendant[s] [who [is; are] on trial]. If you decide that the government has proved [the; a] defendant guilty beyond a reasonable doubt, then it will be my job to decide on the appropriate punishment." Pattern Criminal Jury Instructions of the Seventh Circuit (2018), No. 4.08. Remarks and comments at trial regarding the sentencing consequences of a potential guilty verdict are thus improper. The five-year mandatory minimum on Count Two of the Indictment, the maximum penalties on both counts, and the defendant's guidelines range are all irrelevant information that would support jury nullification.

### III. <u>Defining Reasonable Doubt</u>

The Seventh Circuit has consistently held that trial courts and defense counsel alike should refrain from defining "reasonable doubt" for the jury. For example, in *Bruce*, 109 F.3d at 329, the Seventh Circuit, in upholding a district court's preclusion of the defense attorney's attempts to define reasonable doubt to the jury in closing argument, again emphasized the Seventh Circuit precedent that "it is well established in this Circuit . . . that neither trial courts nor counsel should attempt to define 'reasonable doubt' for the jury." *United States v. Langer*, 962 F.2d 592, 600 (7th Cir. 1992) (reasonable doubt is self-explanatory and further definition would confuse the jury);

5

*United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988) (reasonable doubt definitions are unhelpful to a jury and potentially impair defendant's constitutional right to have the government prove each element beyond a reasonable doubt).

Notably, the Committee Comment to Section 1.04 of the Pattern Criminal Jury Instructions of the Seventh Circuit regarding the "Definition of Reasonable Doubt" discusses *United States v. Glass*, 846 F.2d 386, 386 (7th Cir. 1988), stating: "[I]t is, therefore, inappropriate for judges to give an instruction defining 'reasonable doubt,' and it is equally inappropriate for trial counsel to provide their own definition."

### IV. <u>Selective Prosecution</u>

The defense should not be permitted to argue or present evidence that others who might have engaged in similar conduct have not been prosecuted. "[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury." *United States v. Abboud*, 438 F.3d 554, 579-80 (6th Cir. 2006) (upholding a district court's grant of the government's motion in limine precluding defendants from presenting evidence of selective prosecution); *see also United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.").

### V. <u>Argument or Questioning Implying That the Investigation or Prosecution of This Case Was Racially, Religiously, or Otherwise Improperly Motivated</u>

The defendant should be prevented from advancing forms of argument or questioning designed to interject issues of race or religion into this trial. Permitting unsupported and improper argument or questioning of this nature in the presence of the jury risks irreparable prejudice and confusion of the matters at issue. Courts have long noted that "[a]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." *United States v. Doe*, 903

F.2d 16, 25 (D.C. Cir. 1990).

Not only is there no evidentiary basis for interjecting into this trial allegations of racial or religious animus in the investigation or prosecution of the case, but the law is well-settled that claims of selective prosecution are to be resolved by the court and not the jury. Arguments or evidence about the Government's motivation are not relevant to the jury's determination of a defendant's guilt or innocence. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979); *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994).

As a more general matter, as discussed above, it is also settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., Goulding*, 26 F.3d at 667 (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant.").

Accordingly, the government moves to preclude any argument or questioning that suggests that the investigation or prosecution of this case was racially, religiously, or otherwise improperly motivated.

### VI. Government's Charging Decision and Expenditure of Resources

Relatedly, arguments and comments concerning the government's charging decisions are generally deemed irrelevant to a defendant's guilt or innocence. *See United States v. Mosky*, 1990 WL 70832, at *1 (N.D. Ill. 1990) ("The government seeks to bar only any reference to its decisions regarding who to indict and for what acts. The government is correct that those decisions are not relevant to the charges faced by these defendants.") (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)). The government's decision regarding who to charge and for what crime has no

7

bearing on whether evidence is sufficient to convict a defendant of the charge for which he is on trial. *United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (instructing the jury not to speculate about the government's charging decision).

Finally, the expenditure of resources by the United States in the investigation and prosecution of the case is likewise not a matter for the jury's consideration because it has nothing to do with the defendant's guilt. Thus, the defense should not be permitted to refer to the time or money expended by the United States or to suggest such expenditures were "too much" or that they should have been devoted to other matters. Argument or evidence on such irrelevant resource issues would constitute an appeal to the jury to engage in jury nullification.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court exclude evidence and argument concerning: (1) the defendant's financial predicament, including segments of the defendant's post arrest interview in which he discusses his finances in the weeks preceding the bank robbery; (2) the introduction of family members in opening or closing and statements about the effect of punishment on the defendant or his family; (3) statements about the defendant's and his family's medical issues; (3) possible penalties; (4) attempts to define reasonable doubt for the jury; (5) selective prosecution; (6) the Government's charging decision; (7) the Government's investigation or prosecution was racially, religiously, or otherwise improperly motivated; and (8) resources expended by the Government in investigating and prosecuting the case.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2019.

                                              Respectfully Submitted,

                                              MATTHEW D. KRUEGER
                                              United States Attorney

By:    s/Adam H. Ptashkin
          ADAM H. PTASHKIN
          Assistant United States Attorney
          PHILIP T. KOVOOR
          Assistant United States Attorney
          Office of the United States Attorney
          Eastern District of Wisconsin
          517 East Wisconsin Avenue, Suite 530
          Milwaukee, Wisconsin 53202
          Tel: (414) 297-1700
          Fax: (414) 297-1738
          Email: adam.ptashkin@usdoj.gov
                    philip.kovoor@usdoj.gov