# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                                      **Case No. 18-CR-237**

**GABRIEL LEE BROWN**
        **Defendant.**

---

## DECISION AND ORDER

A jury convicted defendant Gabriel Lee Brown of bank robbery, 18 U.S.C. § 2113(a), and carrying a firearm during and in relation to, or possessing a firearm in further of, a crime of violence, 18 U.S.C. § 924(c). Defendant moves for judgment of acquittal on both counts under Fed. R. Crim. P. 29 and for a new trial under Fed. R. Crim. P. 33. For the reasons that follow, I deny the motion for acquittal on count one but grant the motion on count two. I also conditionally grant a new trial on count two, as the evidence preponderates strongly against the verdict on that count.

### I. FACTS

The facts of the case are straightforward and largely undisputed. On December 4, 2018, at about 12:38 p.m., defendant, with a T-shirt partially covering his face, walked into a Landmark Credit Union branch in Wauwatosa, Wisconsin, and jumped over the teller counter, knocking down a computer monitor and forcing the tellers to step back to avoid contact. (Apr. 29, 2019 Jury Trial Tr. [R. 47] at 72-73, 78, 81, 85, 117.) However, he did not actually touch anyone or say anything, and no one observed a firearm. (Id. at 86-87, 88-89, 120.) He then grabbed money from the teller drawers, jumped back over the counter, and ran out. (Id. at 73,

118.)

After leaving the bank, defendant returned to his vehicle, which was parked in a nearby lot, and drove away. Police received a dispatch call about the robbery at 12:40 p.m. (Id. at 125.) At about 12:47 p.m., based on information relayed by a GPS device concealed in the stolen money, a police officer located defendant's vehicle and attempted a traffic stop. (Id. at 97, 114, 135.) Defendant initially pulled over but then sped away, leading officers on a five-minute chase, which came to an end when he hopped a curb, pulling into the grass in front of an apartment building, got out and ran with the money. (Id. at 133, 141-43, 167.) Police were able to apprehend him about 100 feet from his vehicle, taking him into custody at about 12:52 p.m. (Id. at 143-44, 158.) Officers asked defendant where his gun was at, and he responded, "it's in the car." (Id. at 170.) On looking in the vehicle officers observed a revolver on the driver's side floorboard. (Id. at 174, 187, 201, 210.)

At trial, defendant admitted entering the bank and taking money. (Id. at 242.) However, he testified that he placed the gun in the car, between the driver's seat and armrest area, a week or two before the robbery and forgot it was there until his car struck the curb and it popped out and hit the back of his foot. (Id. at 246-48, 249, 268.)

In rebuttal, the government presented defendant's post-arrest statement to a detective. Defendant's statement to the detective, for the most part, reinforced his in-court testimony. In his statement, defendant admitted that he parked in a Hobby Lobby parking lot about two blocks from the bank, used a black T-shirt to conceal his face, walked into the bank, jumped the counter, and took money, then returned to his car and drove away towards his home. (Id. at 278-279, 281.) He also told the detective that he forgot the gun was in the car that day. (Id. at 280.) He said he normally kept the gun under the seat and did not know how it slid out. (Tr.

2

at 282.)

## II.  DISCUSSION

**A.    Rule 29 Motions**

The district court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  Fed. R. Crim. P. 29(a).  In deciding a Rule 29 motion, the court must view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  United States v. Garcia, 919 F.3d 489, 496 (7th Cir. 2019).  The Seventh Circuit has often said that a defendant seeking a judgment of acquittal faces a "nearly insurmountable hurdle," but it has also insisted that the height of the hurdle depends directly on the strength of the government's evidence.  Id. at 496-97; United States v. Jones, 713 F.3d 336, 339 (7th Cir. 2013).  While successful challenges are relatively rare, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 317 (1979).

In the present case, defendant moved for acquittal at the close of the government's case, and I reserved decision.  (Apr. 29, 2019 Trial Tr. at 226.)  He then presented a defense case, renewing his motion before the matter was submitted to the jury, and I again reserved decision.  (Apr. 30, 2019 Trial Tr. [R. 48] at 8.)  Under these circumstances, the court must decide the motion on the basis of the evidence at the time ruling was reserved.  Fed. R. Crim. P. 29(b).

3

### 1. Count One

In order to obtain a conviction on the bank robbery count, the government was required to prove: (1) that defendant took from the person or presence of another money belonging to or in the care, custody, control, management or possession of Landmark Credit Union; (2) that at the time defendant took the money the deposits of the credit union were insured by the National Credit Union Administration; and (3) that defendant acted to take such money by force and violence, or by intimidation. (Jury Instructions [R. 41] at 13.) At trial, the parties stipulated to the second element (Apr. 29, 2019 Trial Tr. at 158), and defendant concedes the first. Only the third element is at issue.

While the record contains no evidence that defendant used "actual force or violence" to take the money, see United States v. Thornton, 539 F.3d 741, 747 (7th Cir. 2008), a reasonable jury could find "intimidation," which "means to say or do something that would make a reasonable person feel threatened under the circumstances." (R. 41 at 14.) Defendant notes that he did not possess a gun, issue any threats, or make physical contact with anyone inside the bank. (R. 52 at 1, R. 59 at 2.) However, intimidation covers the explicit or implicit threat of force, United States v. Williams, 864 F.3d 826, 830 (7th Cir. 2017), and a defendant's actions can rise to the level of intimidation even if he was unarmed or did not explicitly threaten a bank employee, see United States v. Hill, 187 F.3d 698, 701 (7th Cir. 1999).

Defendant's conduct here, entering the bank with his face masked, jumping over the counter, forcing the tellers to retreat lest they collide, and knocking over a computer monitor, created an intimidating situation. Indeed, the tellers testified that they were shocked and scared. (Apr. 29, 2019 Trial Tr. at 82-83, 87, 118.) While such subjective reactions are not dispositive, evidence that a teller felt threatened is probative of whether a reasonable person

4

would have been afraid under the same circumstances. Hill, 187 F.3d at 702.

In reply (R. 59 at 6), defendant cites United States v. Wagstaff, 865 F.2d 626, 627 (4th Cir. 1989), but in that case the robber "walked through an open gate into the teller area [and] began taking money from a teller's open cash drawer." While acknowledging that this may have been startling to those in the bank, the Fourth Circuit found that it did not rise to the level of intimidation, "where the thief was neither wearing nor carrying a weapon, produced no note and said nothing, and made no threatening gestures." Id. at 629. Here, defendant did not simply walk into the teller area; he aggressively jumped into their space, forcing them to move back.

This case is more like United States v. Caldwell, 292 F.3d 595, 597 (8th Cir. 2002), in which the defendant slammed his hands down on the teller's desk and leaped toward her, approaching to within a couple of feet. In rejecting the defendant's challenge to the sufficiency of the evidence, the court stated:

> We believe that any reasonable bank teller would be intimidated . . . by the sight of someone leaping over the teller counter toward her or him. . . . While Caldwell did not speak or give any indication that he had a weapon, his aggressive actions would be intimidating to a reasonable person. Thus, we conclude that a reasonable fact-finder could conclude that the government proved the intimidation element beyond a reasonable doubt.

Id. I reach the same conclusion here and deny defendant's motion on count one.

**2.  Count Two**

In order to obtain a conviction on the § 924(c) count, the government was required to prove: (1) that defendant committed the crime of bank robbery, as charged in count one; and (2) that he knowingly carried a firearm during and in relation to, or knowingly possessed a

5

firearm in furtherance of, that crime.[1]  (Jury Instructions [R. 41] at 15.)  A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.  (Id. at 21.)  A person "carries" a firearm when he knowingly transports it on his person or in a vehicle or container.  (Id. at 16.)  The term "during" means at any point within the offense conduct.  (Id. at 17.)  A person carries a firearm "in relation to" a crime if there is a connection between the carrying of the firearm and the crime of violence.  The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence.  The firearm must at least facilitate, or have the potential of facilitating, the crime.  (Id. at 18.)  A person "possesses" an object if he knowingly has the ability and intention to exercise control over the object, either directly or through others; a person may possess an object even if he is not in physical contact with it and even if he does not own it.  (Id. at 22.)  A person possesses a firearm "in furtherance of" a crime if the firearm furthers, advances, moves forward, promotes or facilitates the crime.  The mere presence of a firearm at the scene of a crime, or at the point of arrest, is insufficient; there must be some connection between the firearm and the crime. (Id. at 19.)

The government presented no evidence that defendant carried/possessed the firearm inside the bank, and it does not now argue that a reasonable jury could infer that the firearm facilitated his taking of the money.  Rather, the government argues that the firearm facilitated, or had the potential to facilitate, his getaway.  The government contends that the crime was premeditated, noting that defendant parked his car out of sight, fashioned a disguise, and

---

[1] In pre-trial rulings, I rejected defendant's duplicity argument and agreed to instruct the jury on both prongs of the statute in the alternative.  (R. 28, 37.)

6

brought a plastic bag into the bank. After taking the money, he ran back to his getaway car, which contained the loaded firearm, and fled towards his house. The firearm was within his reach during the chase, and his statement to officers on arrest showed that he knew it was there. (R. 57 at 17.)

Defendant argues that the government failed to prove that he knowingly possessed/carried the firearm, since he did not realize it was in the car until the end of the chase. (R. 53 at 7, 9-11.) He further argues that the chase was not "part of" the robbery, which was complete after he removed the money from the bank. (Id. at 7, 12-19.) Finally, even if the chase was part of the robbery, defendant argues that the firearm served no purpose in this offense at any time. (Id. at 8, 19-24; see also R. 59 at 2.)

### a. Knowingly Carry/Possess

Defendant argues that the mere fact that he was driving a car in which the police found a firearm is not enough to establish that he knowingly carried/possessed the firearm. (R. 53 at 10, citing United States v. Bailey, 553 F3d 940, 948 (6th Cir. 2009) ("Were we to hold that driving the car as its lone occupant sufficed to establish constructive possession of a firearm found underneath the driver's seat, then we would thereby institute an untenable strict-liability regime for constructive possession under 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A)(i).").)

However, this argument overlooks defendant's post-arrest statement that his gun was "in the car." As the Bailey court noted, additional evidence beyond mere proximity, such as "a defendant's statement to police suggesting that he had knowledge of the firearm," may suffice to prove constructive possession. Id. at 949. Here, a reasonable jury could conclude from defendant's prompt admission at the time of arrest that his gun was in the car that he knew it was there all along.

Defendant testified that he placed the gun in the car a week or two before the robbery and forgot it was there until it popped out when he struck the curb. (R. 53 at 10.) However, the jury was not required to credit that testimony, and the court may not in deciding a Rule 29 motion re-determine the credibility of witnesses. See, e.g., United States v. Wilson, 879 F.3d 795, 802 (7th Cir. 2018). Defendant argues that, even if the jury discredited his testimony, that cannot make up for a shortfall in the government's proof. (R. 53 at 11, citing Bailey, 553 F.3d at 946-47.) However, the government presented defendant's post-arrest "it's in the car" statement in its case-in-chief.

### b. The Chase

Defendant next contends that the robbery was complete as soon as the money was taken.[2] (R. 53 at 15-17.) However, he cites no authority in support of this argument, and courts have held, in a variety of contexts, that the offense conduct for robbery does not necessarily end when the initial taking is complete; rather, it may continue until the perpetrator has made his way to a place of temporary safety. E.g., United States v. Figueroa-Cartagena, 612 F.3d 69, 79 (1st Cir. 2010) (collecting cases); see also United States v. Smith, 415 F.3d 682, 689 (7th Cir. 2005) (noting that escape can be part of a bank robbery), vacated on other grounds, 547 U.S. 1190 (2006); United States v. Donaby, 349 F.3d 1046, 1051-55 (7th Cir. 2003) (approving restitution for damages caused during getaway); United States v. Williams, 344 F.3d 365, 375 (3d Cir. 2003) ("[W]e conclude that flight may be considered a part of a bank robbery under § 924(c), under certain circumstances[.]").

---

[2]Defendant's argument that the gun was not available/accessible during the robbery also depends on his contention that only his conduct inside the bank matters. (R. 53 at 12-13.) This argument thus collapses into his contention that the robbery was complete when he left the bank.

8

The government contends that this is one of those circumstances, where the flight was temporally and proximately related to the bank robbery. (R. 57 at 20.) Defendant responds with some force that the chase in this case was temporally separate from the robbery, and that the other "flight" cases the government cites are distinguishable. (R. 59 at 9-13)

The chase here began about seven minutes after defendant left the bank. See United States v. Pike, 473 F.3d 1053, 1060 (9th Cir. 2007) (holding that the period of escape under § 2113(a) encompasses only "hot pursuit"). The evidence shows that, during this time, defendant made his way back to his car and was driving normally towards his home. He was not pursued from the bank, and he did not flee the area of the bank at a high rate of speed. To the contrary, at the time the police located his car via the GPS tracker defendant was driving normally, obeying the traffic laws. (Apr. 29, 2019 Trial Tr. at 114, 150-51.)

The government cites a number of getaway cases, but most are not on point. (R. 57 at 21.) In United States v. Ashburn, 20 F.3d 1336, 1340 (5th Cir. 1994), vacated in part on reh'g, 38 F.3d 803 (5th Cir. 1994), for instance, the defendant threatened to shoot bystanders who tried to stop him as he exited the bank and ran to the getaway car. In affirming the imposition of a guideline enhancement for making a "threat of death," the court agreed "that the escape phase of the robbery can be considered part of the offense of bank robbery under various circumstances." Id. at 1341. However, in that case, the conduct at issue occurred immediately after the defendant left the bank.

In United States v. Muhammad, 948 F.2d 1449, 1456 (6th Cir. 1991), the court noted that since "the crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight." Muhammad also concerned a guideline enhancement—for

9

bodily injury to a police officer who responded to the scene in response to the bank's alarm and was attacked by one of the suspects. Id. at 1451. Again, the conduct at issue occurred immediately after the robbery.

Other cases the government cites, United States v. Dinkane, 17 F.3d 1192, 1200 (9th Cir. 1994); United States v. McCaskill, 676 F.2d 995, 1000-01 (4th Cir. 1982); United States v. Wilkins, 659 F.2d 769, 773 (7th Cir. 1981); and United States v. Willis, 559 F.2d 443, 444 (5th Cir. 1977), while noting that escape may be part of a bank robbery, concerned the aiding and abetting liability of getaway drivers and thus shed little light on the issue here.[3] In Smith, 415 F.3d at 688, also an aiding and abetting case, the Seventh Circuit found no reversible error when the judge instructed the jury that: "Escape is part and parcel of a bank robbery." However, the court was careful to note that a more detailed instruction would have been better, including a limitation to immediate pursuit, but found that the defendant was not prejudiced given the instructions taken as a whole. Id. at 689.

Closer to this case is Williams, where the Third Circuit affirmed a § 924(c) conviction based on a firearm the defendant carried while escaping in the getaway car. Again, however, this appeared to be a "hot pursuit" situation, and the government presented evidence that the

---

[3]It is worth noting that in Dinkane, 17 F.3d at 1198, the court did reverse the driver's conviction for armed bank robbery, stating:

> There was . . . no evidence that prior to the robbery Dinkane knew that the robbers had and intended to use weapons. Furthermore, Dinkane did not participate in the use of the weapons to assault the people in the bank or to put their lives in jeopardy because he was waiting outside the bank, in the car. There was evidence that Dinkane knew the robbers were armed when they exited the bank (the robbers visibly carried guns as they ran out, they left guns by the car, and Carmichael carried a gun as they fled on foot), but there was no evidence that the weapons were used to assault anyone or to put any lives in jeopardy during the escape.

10

defendant threw the gun from the car during the chase. 344 F.3d at 368. Here, no one observed a firearm until after defendant was taken into custody.

As the Williams court acknowledged, "Obviously, escape does end at some point, such that the concept of 'during and in relation to' will have some boundaries as a matter of common sense." Id. at 375. The court explained "that it is a fact-based inquiry," id., to be decided based on the particular circumstances of the case.

In the present case, I declined the government's request to instruct the jury that escape or flight is part of the crime of bank robbery, concerned that this could turn a permissible inference into a compulsory one. In ruling on the proposed instructions, I stated: "It should be up to the jury to decide whether the police chase in this case, which, defendant contends, occurred not right after he left the bank but some time later after the police found him using a GPS device, was 'during' and 'in furtherance of' the robbery." (R. 49 at 6.) The jury made that determination, and given that the chase occurred within 10 minutes of the robbery, at a time when defendant had not yet reached safe harbor,[4] I cannot conclude that it was an unreasonable one. See United States v. Villalobos-Macias, 280 F. Supp. 3d 1211, 1218 (D.N.M. 2017) ("Whether and when such flight ended, either because Defendant reached a point of temporary safety or through some other intervening event, is a question of fact for the jury.").[5]

---

[4]The government presented a recorded jail call in which defendant stated: "The skit was to get around an, and stash what I had and keep it moving." (Govt.'s Ex. 25.)

[5]Pike provides an example of the sort of attenuation that would make imposition of an enhanced sentence for firearm possession inappropriate. There, after robbing a bank, the defendant fled on a bicycle to his car, which he had parked "a ways away," without being followed. He then drove his car to a credit union, where he made a deposit to pay his rent. About 30 minutes after the robbery, using a tracking device, police located defendant, pulled

11

### c. Facilitation

Finally, defendant argues that even if the chase was part of the offense, the gun still played no role because it did not do anything to advance the crime. I agree.

It is well-settled that the mere presence of a firearm, without more, is insufficient to prove that the gun was possessed in furtherance of the crime. United States v. Castillo, 406 F.3d 806, 814 (7th Cir. 2005); see also United States v. Schmalzried, 152 F.3d 354, 357 (5th Cir. 1998) (requiring a nexus—some purpose or effect—with respect to the underlying crime); United States v. Taylor, 31 F.3d 459, 466 (7th Cir. 1994) (stating that mere proximity cannot establish the "in relation to" element).[6] The burden is on the government to present a viable theory as to how the gun furthered the crime, and it must present specific, non-theoretical evidence to tie that gun and the crime together under that theory. United States v. Doody, 600 F.3d 752, 755 (7th Cir. 2010). The government failed to do so here. Even now, the government does not specifically state what the purpose of the gun was or explain how, from its mere presence under the seat or lying on the floorboard, the gun facilitated or even had the potential

---

him over, and on searching the car found a gun. 473 F.3d at 1055. The court held that a guideline enhancement for firearm possession "would be improper because the flight from the bank clearly ended when the defendant completed his bicycle trip from the crime scene to the car, which he then drove to the credit union in order to make a deposit to his landlord's account. Driving the car to the credit union could not, under the circumstances, constitute a part of the flight." Id. at 1060.

[6]While the two prongs of the statute utilize different language ("during and in relation to" v. "in furtherance of"), the distinction is "'somewhat elusive.'" United States v. Harvey, 484 F.3d 453, 456 (7th Cir. 2007) (quoting United States v. Mackey, 265 F.3d 457, 461 (6th Cir. 2001)). Courts have noted that while the two standards are not identical, they appear to carry substantially the same import, namely that there must be a nexus between the firearm and the alleged crime, and that the mere possession of the firearm by a person connected to and engaged in criminal activity is insufficient to trigger § 924(c). Id. at 456-57 (citing United States v. Avery, 295 F.3d 1158, 1175 (10th Cir. 2002)).

of facilitating the flight.

The record contains no evidence that during the chase defendant picked up the gun or made any furtive gestures towards the floorboard; no one saw the gun until after defendant was arrested and the officers looked in the car. Some courts have suggested that the presence of a firearm may serve to protect the proceeds or "embolden" the robber during escape, e.g., Williams, 344 F.3d at 375, 378; United States v. Pate, 932 F.2d 736, 738-39 (8th Cir. 1991), but the government does not develop such an argument or point to any evidence supporting such a theory here. Moreover, to the extent it could be suggested that the firearm served to protect the money or embolden defendant as he tried to get to safety and stash the loot, it is significant that at the end of the car chase he ran with the money, but the gun remained in the vehicle. Nor did defendant make any statements suggesting that the gun was present for protection during the robbery. Cf. Pate, 932 F.2d at 738 ("Here, the stated purpose of the loaded shotgun was to protect the fruits of the bank robbery and to aid in effectuating the escape, a sufficient nexus to support Count Three.").[7]

While juries may draw reasonable inferences from the evidence, the government must show more than mere presence of a gun to obtain a conviction under § 924(c). Castillo, 406 F.3d at 814; see also United States v. Mann, 389 F.3d 869, 878-80 (9th Cir. 2004); United States v. Krouse, 370 F.3d 965, 967 (9th Cir. 2004). Because the government failed to do so here, the conviction on count two cannot stand.

---

[7] Here, defendant stated that he had put the gun in the car a week or two before the robbery and had forgotten it was there until it popped out when the car struck the curb. While the jury was not required to accept defendant's testimony, it is significant that the government presented no evidence suggesting any contrary version. It is undisputed that defendant did not take the gun into the bank and did not use it in any way during his getaway, either to facilitate his effort to get to safety or to protect the money.

13

**B.     Rule 33 Motion**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  Relief under Rule 33 is appropriate where legal errors or omissions deprived the defendant of a fair trial, United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989), or where the evidence preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand, United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989).

> A court considering a motion for judgment of acquittal must view the evidence in the light most favorable to the government, and only grant the motion if no rational jury could find guilt beyond a reasonable doubt.  By contrast, a court evaluating a motion for a new trial may weigh evidence, evaluate credibility, and grant the motion if the substantial rights of the defendant have been jeopardized.

United States v. Eberhart, 388 F.3d 1043, 1052 (7th Cir. 2004) (internal citations and quote marks omitted), rev'd on other grounds, 546 U.S. 12 (2005); see also United States v. Rivera, 901 F.3d 896, 903 (7th Cir. 2018) ("In considering a motion for a new trial, a district judge may assess the credibility of the witnesses and may grant a new trial if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice.") (internal quote marks omitted), cert. denied, 139 S. Ct. 1223 (2019).

As indicated above, I have determined that judgment of acquittal must be entered on count two.  Under these circumstances, "the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed."  Fed. R. Crim. P. 29(d)(1).

In his Rule 33 motion, defendant argues (1) that the evidence preponderates against conviction on both counts, and (2) that he was denied a fair trial by his lawyer's ineffectiveness in failing to seek suppression of his post-arrest "it's in the car" statement as a Miranda violation.

14

(R. 54 at 1.) In reply (R. 59 at 3), defendant abandons the ineffective assistance claim, conceding that the statement is likely admissible under the "public safety" exception. See New York v. Quarles, 467 U.S. 649, 655 (1984) (holding that "there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence"); see also Long v. United States, 847 F.3d 916, 920 (7th Cir. 2017) ("When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence, we require him to 'prove the motion was meritorious.'") (quoting United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005)).

For essentially the same reasons stated above in discussing the sufficiency of the evidence, permitting the verdict to stand on count one creates no miscarriage of justice. However, the evidence preponderates strongly against the verdict on count two. Even if a reasonable jury could infer that the firearm served some purpose in facilitating the robbery, the record contains no positive evidence supporting such an inference. Rather, the evidence shows that defendant did not carry the gun into the bank, did not pick it up or reach for it during the chase, and left it in the car when he ran away with the money.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for judgment of acquittal on count one (R. 52) is denied, his motion for judgment of acquittal on count two (R. 53) is granted, and his motion for a new trial (R. 54) is conditionally granted as to count two only.

**IT IS FURTHER ORDERED** that this matter is scheduled for **SENTENCING** on **Wednesday, August 19, 2020, at 1:30 p.m.**

**FINALLY, IT IS ORDERED** that the parties file any sentencing motions, memoranda,

or other materials (such as letters) on or before **August 12, 2020**.

Dated at Milwaukee, Wisconsin, this 11th day of May, 2020.

s/ Lynn Adelman<br>
LYNN ADELMAN<br>
District Judge